PEPPER v. SPRINGFIELD INSTITUTION FOR SAVINGS et al.

SPRINGFIELD INSTITUTION FOR SAVINGS et al. v. PEPPER.

(Circuit Court of Appeals, First Circuit. January 7, 1915.)

Nos. 1080, 1081.

1. BANKS AND BANKING (§ 248*)—NATIONAL BANKS—INSOLVENCY—ASSESSMENT ON STOCKHOLDERS.

Where an assessment of 100 per cent. had been levied on the stockholders of a national bank, a subsequent assessment of 49 per cent. could not be sustained while the original assessment continued in force.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. § 248.*]

2. BANKS AND BANKING (§ 250*)—NATIONAL BANKS—INSOLVENCY—ASSESSMENT ON STOCK—REVOCATION.

The Comptroller of the Currency having found a national bank insolvent and made an assessment of 100 per cent. on its stock, such assessment was not vacated or annulled by a letter written by the Comptroller to the directors, approving a contemplated sale of bonds held by the bank, and stating that, if such sale was made, he did not hesitate to say that there would be no necessity for an assessment on stockholders, unless an unlooked-for shrinkage in the value of the assets should occur, which was highly improbable.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 932–939; Dec. Dig. § 250.*]

Appeals from the District Court of the United States for the District of Massachusetts; George H. Bingham, Judge.

Suit by Ellis S. Pepper, as receiver, etc., against the Springfield Institution for Savings and others. From a judgment in favor of defendants, plaintiff appeals, and the Springfield Institution for Savings and others prosecute a cross-appeal against the receiver. Affirmed.

Charles G. Gardner, of Springfield, Mass. (Gardner & Gardner, of Springfield, Mass., on the brief), for plaintiff.

Boyd B. Jones, of Boston, Mass. (William H. Brooks, of Springfield, Mass., on the brief), for defendants Springfield Institution for Savings and others.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PUTNAM, Circuit Judge. The propositions submitted to the court at the trial of this case suggested the necessity of determining whether we could be required to make offsets or rebates, involving any such troublesome questions as grew out of the failure of the Pacific National Bank, some of which appeared in Delano v. Butler, Receiver, 118 U. S. 634, 7 Sup. Ct. 39, 30 L. Ed. 260. An examination of this record, however, shows that the case was disposed of by the District Court on a very simple proposition, which enables us to affirm the results reached in that court without concerning ourselves at present about what may hereafter follow.

[1] It seems there were two assessments on the stockholders of a failed national bank, the first one being for the full amount of the par of its stock, and the second one being for 49 per cent. of the same par. There was an incomplete attempt to annul the first assessment of the par of the stock, and the present proceedings were instituted on the second assessment of 49 per cent. As we have said, there was an at-attempt to annul the first assessment and hold the second assessment valid; the court conceding that both assessments, which amounted to 149 per cent., could not stand together, citing in support of that proposition Studebaker v. Perry, 184 U. S. 258, 22 Sup. Ct. 463, 46 L. Ed. 528. It is not apparent that Studebaker v. Perry ruled this particular point; but we have no occasion to cite authorities in reference to it, because it is too plain a proposition that assessments of $149 a share would not be valid under the statute to require any citation of authorities in reference thereto.

The attempt to invalidate the first assessment was put on the following grounds by the court below. Our references to what was thus said do not require us to go into dates, or any details except those which we give, as follows:

[2] After the assessment of $100 per share was laid, an arrangement was entered into by which the creditors of the bank, and perhaps some others, arranged to take up a mass of bonds held by the insolvent bank, issued by the American Writing Paper Company, on terms which it was thought would make the insolvent bank solvent. Thereupon the Comptroller of the Currency sent to the directors of the insolvent bank a letter, of which the following is a copy:

"The Board of Directors, Pynchon National Bank, Springfield, Mass.

"Gentlemen: In view of the effort now being made by the directors and stockholders of the Pynchon National Bank of Springfield, Mass. (insolvent), to dispose of to the stockholders a large number of the first mortgage bonds of the American Writing Paper Company, I wish to say to your board that this will effect a settlement of the affairs of this bank that will be eminently satisfactory to all interests, and one which I am very hopeful will be accomplished.

"I am just in receipt of the report of the special examination of this trust, made by an official of this department, sent to Springfield for that purpose, and I am quite satisfied if this sale of bonds is effected, the receiver will be able to pay out to the creditors one hundred (100) cents on the dollar, and that within a very few months.

"I wish further to say that after this examination it is very plain that there will be no escape from an assessment of 100 per cent. against the stockholders, if the receiver had to put the Writing Paper bonds on the market at 65 or thereabouts.

"The receiver and the special examiner report most confidently that if these bonds are taken at ninety-five (95), the trust will pay out in full, and I do not hesitate to say there will be no assessment necessary against the stockholders, unless some unlooked-for shrinkage in value of assets should happen, which, of course, is highly improbable.

"I trust that you, gentlemen, will use every possible effort to effect this most satisfactory settlement of these matters.

"Respectfully,        Wm. B. Ridgely, Comptroller."

This letter was written by the Comptroller in good faith, and with the expectation that it would be shown, and it was shown, to the shareholders, including the savings banks, parties to these proceedings. Those banks made certain payments to the receiver, which were not directly by way of purchasing any portion of the bonds of the American Writing Paper Company aforesaid, but were intended to make up certain deficiencies which came from disposing of some of those bonds to other parties, so as to leave the receiver in the same condition in which he would have been if the savings banks, parties to these proceedings, had taken these bonds on the same terms that other stockholders took them. These details we need not go into further, because the case as we leave it does not rest there. Thereupon, however, the enforcement of the first assessment of $100 on each share was suspended; but subsequently, for reasons which were not explained to us, it was thought necessary to make this other assessment of $49 per share, which other assessment forms the basis of the present litigation, the primary question as to which is whether or not this assessment can be enforced.

So far as we can discover, the action of the Comptroller about not enforcing the first assessment was in pursuance of the letter which we have copied into this opinion. Neither that letter, nor anything which followed it, in terms annulled the first assessment; and all that can be said about it further is that no attempt was made to enforce it. The agreed statement which makes a part of the record states as follows:

"Said letter of the Comptroller of the Currency addressed to the board of directors related to an effort then being made by the directors, stockholders, and the receiver to procure the purchase from the receiver of said American Writing Paper Company bonds at the price at which they had been bought by the bank. Said directors and the receiver were then of the opinion that if said purchase upon said terms could be effected it would provide sufficient funds to enable the receiver of said bank to pay its debts in full, thereby obviating the necessity for the payment of said assessment or the enforcement of any personal liability whatsoever on the part of the stockholders."

We find nothing further in the record, or in the opinion of the District Court, which shows any definite action in reference to the first assessment. Neither the record nor the opinion of the District Court assumes to discuss the question whether or not the assessment of $100 per share, laid by the Comptroller, could be annulled, or in any way disposed of, in this informal manner. The history of the statutes of the United States on this topic, and their nature, are well shown by Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476; Bushnell v. Leland, 164 U. S. 684, 17 Sup. Ct. 209, 41 L. Ed. 598, and Studebaker v. Perry, ubi supra, at various points through the opinion. These citations show that the duty of the Comptroller in this connection was a quasi judicial one, with the result that any findings, though ex parte,

were absolutely binding on the shareholders, and were of a character which involved an accounting and a solemn record on the part of the Comptroller's department. It is not credible that the solemn findings of the Comptroller of such a character should be nullified and wiped out by a mere letter such as we have quoted, followed by the mere inaction of the kind we have described. However this may be, there is no thorough discussion in the record, or in the opinion of the District Court, which enables us to ascertain that the first assessment of the par of the stock was ever annulled. The correspondence merely shows an intention not to enforce it. On this account, we agree without hesitation that the decree of the District Court dismissing the receiver's bill for the enforcement of the assessment of 49 per cent. was correct; and, as the fate of the cross-bill here necessarily follows the fate of the original bill, the dismissal of the cross-bill was also correct.

The decree of the District Court refused any costs on the cross-bill, and the relations of the parties, on the whole, relieve us from the necessity of determining any right to costs on these appeals. Therefore the judgment will be as follows, in each appeal:

The decree of the District Court is affirmed, without costs.