GLOVER CONSTRUCTION
COMPANY, Plaintiff,

v.

Cecil ANDRUS, Secretary of the Depart-
ment of Interior, et al., Defendants.

No. 77–178–C.

United States District Court,
E. D. Oklahoma.

March 29, 1978.

On Motion for Clarification May 12, 1978.

Dwight Hayes, A. Camp Bonds, Jr., Muskogee, Okl., for plaintiff.

Betty O. Williams, Asst. U. S. Atty., Muskogee, Okl., for defendants.

### ORDER GRANTING SUMMARY JUDGMENT

MORRIS, Chief Judge.

This action is before the court on motions for summary judgment filed by the plaintiff and the defendants. The parties have filed briefs setting forth their respective positions in connection with these motions.

Plaintiff contends that it is entitled to summary judgment on its claim that the policy of the Bureau of Indian Affairs (BIA) of entering into contractual negotiations with wholly Indian owned companies

regarding road construction without complying with the advertising requirements of 41 U.S.C. § 5 and 41 U.S.C. § 253 denies plaintiff equal protection of the laws and due process of law. In this connection plaintiff asserts that the BIA, in 1976 began implementing a new interpretation of the "Buy Indian Act," 25 U.S.C. § 47, which act has been in effect since 1910. Plaintiff points to an interdepartmental memorandum, 20 BIAM Bulletin 1, March 3, 1976 (Exhibit D to defendants' brief) providing that negotiations are to be conducted with Indian contractors and that non-Indian contractors are to be contacted only after it has been determined that there are no qualified Indian contractors within the normal competitive area. Plaintiff contends that the Buy Indian Act does not authorize contract negotiations for the construction of roads and that such a procurement must be obtained in accordance with the requirements set out in 41 U.S.C. §§ 5 and 253.

Defendants claim that they have consistently followed the policy set out in the bulletin and that the Buy Indian Act falls within the "otherwise authorized by law" exception to advertising under 41 U.S.C. § 252(c)(15). *See* Exhibit J to defendants' brief. In response to the latter contention plaintiff states that 41 U.S.C. § 252(e) fails to exempt contracts for the construction of roads from the advertising requirements, since it expressly exempts 41 U.S.C. § 252(c)(1)–(3), (10)–(12), and (14) but does not refer to subsection (15). Thus, plaintiff argues, subsection (15) is not excluded from the provisions of 41 U.S.C. § 253 under the maxim "expressio unius est exclusio alterius."

25 U.S.C. § 47 provides:

So far as may be practicable Indian labor shall be employed, and purchases of the products of Indian industry may be made in open market in the discretion of the Secretary of the Interior.

Section 47 was codified from the Act of June 25, 1910, ch. 431, § 23, 36 Stat. 861 which provides in its entirety as follows:

That hereafter the purchase of Indian supplies shall be made in conformity with the requirements of section thirty-seven hundred and nine of the Revised Statutes of the United States: *Provided,* That so far as may be practicable Indian labor shall be employed, and purchases of the products of Indian industry may be made in open market in the discretion of the Secretary of the Interior. All Acts and parts of Acts in conflict with the provisions of this section are hereby repealed.

Since title 25 of the United States Code is not among the titles of the United States Code which have been enacted into law, *see* Preface to 1976 Edition of the United States Code, reference to the Statutes at Large is proper. Section 3709 of the Revised Statutes has been codified as 41 U.S.C. § 5.

41 U.S.C. § 252 provides in pertinent part:

(a) Executive agencies shall make purchases and contracts for property and services in accordance with the provisions of this chapter and implementing regulations of the Administrator; but this chapter does not apply—

(1) to the Department of Defense, the Coast Guard, and the National Aeronautics and Space Administration; or

(2) when this chapter is made inapplicable pursuant to section 474 of Title 40 or any other law, but when this chapter is made inapplicable by any such provision of law sections 5 and 8 of this title shall be applicable in the absence of authority conferred by statute to procure without advertising or without regard to said section 5.

. . . .

(c) All purchases and contracts for property and services shall be made by advertising, as provided in section 253 of this title, except that such purchases and contracts may be negotiated by the agency head without advertising if—

. . . .

(15) otherwise authorized by law, except that section 254 of this title shall apply to purchases and contracts made without advertising under this paragraph.

. . . .

(e) This section shall not be construed to (A) authorize the erection, repair, or furnishing of any public building or public improvement, but such authorization shall be required in the same manner as heretofore, or (B) permit any contract for the construction or repair of buildings, roads, sidewalks, sewers, mains, or similar items to be negotiated without advertising as required by section 253 of this title, unless such contract is to be performed outside the continental United States or unless negotiation of such contract is authorized by the provisions of paragraphs (1)–(3), (10)–(12), or (14) of subsection (c) of this section.

41 U.S.C. § 253(a) provides:

Whenever advertising is required—

(a) The advertisement for bids shall be made a sufficient time previous to the purchase or contract, and specifications and invitations for bids shall permit such full and free competition as is consistent with the procurement of types of property and services necessary to meet the requirements of the agency concerned. No advertisement or invitation to bid for the carriage of Government property in other than Government-owned cargo containers shall specify carriage of such property in cargo containers of any stated length, height, or width.

41 U.S.C. § 5 provides:

Unless otherwise provided in the appropriation concerned or other law, purchases and contracts for supplies or services for the Government may be made or entered into only after advertising a sufficient time previously for proposals, except (1) when the amount involved in any one case does not exceed $10,000, (2) when the public exigencies require the immediate delivery of the articles or performance of the service, (3) when only one source of supply is available and the Government purchasing or contracting officer shall so certify, or (4) when the services are required to be performed by the contractor in person and are (A) of a technical and professional nature or (B) under Government supervision and paid for on a time basis. Except (1) as authorized by section 1638 of Appendix to Title 50, (2) when otherwise authorized by law, or (3) when the reasonable value involved in any one case does not exceed $500, sales and contracts of sale by the Government shall be governed by the requirements of this section for advertising.

In the case of wholly owned Government corporations, this section shall apply to their administrative transactions only.

41 U.S.C. § 260 provides:

Sections 5, 8 and 13 of this title shall not apply to the procurement of property or services made by an executive agency pursuant to this chapter. Any provision of law which authorizes an executive agency (other than an executive agency which is exempted from the provisions of this chapter by section 252(a) of this title), to procure any property or services without advertising or without regard to said section 5 shall be construed to authorize the procurement of such property or services pursuant to section 252(c)(15) of this title without regard to the advertising requirements of sections 252(c) and 253 of this title.

The parties agree that 41 U.S.C. §§ 252 and 253 apply to the BIA. Since Section 252 does so apply it appears that 41 U.S.C. § 5 does not apply in this case. *See* 41 U.S.C. §§ 252(a)(1) & (2), 260.

The material facts are not in dispute in this case. On May 25, 1977, the BIA entered into a road construction contract with the Indian Nations Construction Company. The BIA had invited three Indian owned companies to bid for the contract, but only the company contracted with submitted a bid. The bidding was restricted to Indian owned firms and no attempt was made to comply with the advertising provisions of 41 U.S.C. § 253. Plaintiff was not afforded an opportunity to bid.

Purchases of property and services for the United States are governed by the Federal Property and Administrative Services Act of 1949, ch. 288, 63 Stat. 377. As indicated previously, there is no dispute that 41 U.S.C. §§ 252 and 253, which are

sections 302 and 303 of the Act, *see* 63 Stat. 393–95, apply to the BIA. The court will accordingly turn to the question whether the procedure followed by the BIA in awarding the road construction contract involved in this case contravenes the requirements set out in 41 U.S.C. §§ 252 and 253.

Section 252(c) makes all purchases and contracts for property and services *subject to the advertising requirements* of section 253 *unless* they come within any of the fifteen enumerated exceptions. Defendants contend that the Buy Indian Act comes within subsection (15). There is no contention that any of the other fourteen exceptions apply in this case. Subsection (e)(B) specifically provides that section 252 shall *not* be construed to permit any contract for the construction of roads to be negotiated *without advertising* as required by section 253 unless the contract is to be performed outside the continental United States or *unless* negotiation of such contract is authorized by the provisions of paragraphs (1)–(3), (10)–(12), or (14) of subsection (c).

Defendants' argument that subsection (e) is an admonition rather than a prohibition and that subsection (c)(15) authorizes negotiation of road construction contracts under the Buy Indian Act is unpersuasive. Congress saw fit to specifically exempt *seven subsections* of section 252(c) from the advertising requirements with respect to road construction contracts and did *not* include the "otherwise authorized by law" provision of subsection (c)(15) within this category. This is the subsection on which defendants rely.

The effect of the enumeration of express exceptions in a statute has been stated as follows:

The specification by the legislature of exceptions to the operation of a general statute, does not necessarily operate to preclude the court from applying other exceptions. However, where express exceptions are made, the legal presumption is that the legislature *did not intend to save other cases from the operation of the statute.* Thus, the rule generally applied is that an exception in a statute

amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions or the enlargement of exceptions made. Under this principle, where a general rule has been established by a statute with exceptions, the courts will not curtail the former, nor add to the latter, by implication. (Emphasis added.)

73 Am.Jur.2d *Statutes* § 316 (1974) (footnotes omitted). The court accordingly concludes that contracts for the construction of roads, such as the contract involved in the instant action, are *not* excepted from the advertising requirements of section 253 by virtue of section 252(c)(15).

Defendants contend, however, that the Buy Indian Act has been interpreted for many years as authorizing construction contracting with invitations to bid restricted to Indian contractors, and that this administrative construction of the statute is entitled to great weight. Plaintiff contends that 20 BIAM Bulletin 1 of March 3, 1976 (Exhibit D to defendants' brief) represents a new policy, and even if not new, that the statutory interpretation therein espoused is entitled to little or no weight since it is not a contemporaneous statutory construction.

Defendants' exhibits establish at best that the interpretation set forth in the 1976 bulletin may date back as far as 1961. Assuming this to be true for the purpose of plaintiff's summary judgment motion it does not follow that such interpretation is entitled to be given great weight, or any weight, upon the question of the proper statutory interpretation.

Defendants rely on *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), and *United States v. Jackson*, 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361 (1930) for the general rule of statutory construction that "great weight is properly to be given to the construction consistently given to a statute by the Executive Department charged with its administration." 280 U.S. at 193, 50 S.Ct. at 146. The Court emphasized in *Udall*, however, that the Secretary had consistently construed the executive order and

public land order there involved since their promulgation and that this interpretation had been made a repeated matter of public record. 380 U.S. at 4, 17, 85 S.Ct. at 801. Furthermore, the Supreme Court has recognized that

> [i]t has been held in many cases that a definitely settled administrative construction is entitled to the highest respect; and, if acted on for a number of years, such construction will not be disturbed except for cogent reasons. See e. g. *Logan v. Davis*, 233 U.S. 613, 627 [34 S.Ct. 685, 5 L.Ed. 1121]. But the court is not bound by a construction so established. *Chicago &c. Ry. Co. v. McCaull-Dinsmore Co.*, 253 U.S. 97, 99 [40 S.Ct. 504, 64 L.Ed. 801]. *United States v. Dickson*, 15 Pet. 141, 161 [10 L.Ed. 689]. *The rule does not apply in cases where the construction is not doubtful.* And if such interpretation has not been uniform, it is not entitled to such respect or weight, but will be taken into account only to the extent that it is supported by valid reasons. *Brown v. United States*, 113 U.S. 568, 571 [5 S.Ct. 648, 28 L.Ed. 1079]. *Merritt v. Cameron*, 137 U.S. 542, 551–552 [11 S.Ct. 174, 34 L.Ed. 772]. *United States v. Alabama Railroad Co.*, 142 U.S. 615, 621 [12 S.Ct. 306, 35 L.Ed. 1134]. *United States v. Healey*, 160 U.S. 136, 145 [16 S.Ct. 247, 40 L.Ed. 369]. *Studebaker v. Perry*, 184 U.S. 258, 268 [22 S.Ct. 463, 46 L.Ed. 528]. *Houghton v. Payne*, 194 U.S. 88, 99 [24 S.Ct. 590, 48 L.Ed. 888].

*United States v. Missouri Pacific R. R.*, 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322 (1929) (emphasis added). The Court has also said:

> True indeed it is that administrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction. True it also is that administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful. *United States v. Moore*, 95 U.S. 760, 763 [24 L.Ed. 588]; *Logan v. Davis*, 233 U.S. 613, 627 [34 S.Ct. 685, 58 L.Ed. 1121]; *Brewster v.*

*Gage*, 280 U.S. 327, 336 [50 S.Ct. 115, 74 L.Ed. 457]; *Fawcus Machine Co. v. United States*, 282 U.S. 375 [51 S.Ct. 144, 75 L.Ed. 397]; *Interstate Commerce Commn. v. N. Y., N. H. & H. R. Co.*, 237 U.S. 178 [53 S.Ct. 106, 77 L.Ed. 248]. The practice has peculiar weight when it involves a *contemporaneous* construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new. *Fawcus Machine Co. v. United States, supra.* (Emphasis added.)

*Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933). And, the Supreme Court further stated in *Missouri Pacific*:

> The language of that provision is so clear and its meaning so plain that no difficulty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. *It is elementary that where no ambiguity exists there is no room for construction.* Inconvenience or hardships, if any, that result from following the statute as written must be relieved by legislation. . . . Construction may not be substituted for legislation. *United States v. Wiltberger*, 5 Wheat. 76, 95–96 [5 L.Ed. 37]. *United States v. Fisher*, 2 Cranch 358, 386 [2 L.Ed. 304]. *Lake County v. Rollins*, 130 U.S. 662, 670 [9 S.Ct. 651, 32 L.Ed. 1060]. *Caminetti v. United States*, 242 U.S. 470 [37 S.Ct. 192, 61 L.Ed. 442]. *Ex parte Public National Bank, ante*, p. 101 [278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202]. *United States v. Colorado & N. W. R. Co.*, 157 F. 321, 327.
>
> . . . Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure and other like extraneous matter may be taken into consideration to aid in the ascertainment of the true legislative intent.

But where the language of an enactment is clear and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed. *United States v. Freight Ass'n,* 166 U.S. 290, 325 [17 S.Ct. 540, 41 L.Ed. 1007]. *Pennsylvania R. R. v. International Coal Co.,* 230 U.S. 184, 199 [33 S.Ct. 893, 57 L.Ed. 1446]. *Mackenzie v. Hare,* 239 U.S. 299, 308 [36 S.Ct. 106, 60 L.Ed. 297]. *Caminetti v. United States, supra,* 490 [of 242 U.S. (37 S.Ct. 192)]. 278 U.S. at 277–78, 49 S.Ct. at 136. (emphasis added).

■ The court is of the view that construction of section 252(c) and (e) is not doubtful and that the rule of deference by the court to an administrative interpretation has therefore no application in this case. Moreover, even if the rule were applicable, defendants have not shown or even contended that the policy challenged in this action has been in effect prior to 1961. The Buy Indian Act has been in effect since 1910 and 41 U.S.C. §§ 252 and 253 have been in effect since 1949. There is accordingly no contemporaneous interpretation involved in this case. It was held in *United States v. Manzi,* 16 F.2d 884 (1st Cir. 1926) that a construction not adopted by the department until after a statute had been in operation for fourteen years was entitled to little or no weight upon the question of the proper interpretation of the statute. *See also Citizen Band of Potawatomie Indians of Oklahoma v. United States,* 391 F.2d 614, 621, 179 Ct.Cl. 473 (1967), *cert. denied,* 389 U.S. 1046, 88 S.Ct. 771, 19 L.Ed.2d 839 (1968).

■ For all of the foregoing reasons and on the basis of the authorities heretofore discussed the court concludes that defendants' procedure in connection with awarding the road construction contract involved in this case contravenes the advertising requirements of 41 U.S.C. §§ 252 and 253.

Summary judgment is accordingly granted in favor of the plaintiff and against the defendants. Defendants' cross-motion for summary judgment is denied.

In view of the court's conclusion that defendants' procedure in restricting bids with respect to road construction contracts to Indian owned companies contravenes 41 U.S.C. §§ 252 and 253, it is unnecessary to reach plaintiff's alternative constitutional arguments.

■ Defendants are hereby enjoined from continuing to circumvent the advertising requirements of 41 U.S.C. § 253 in connection with the road construction contract awarded to Indian Nations Construction Company. Defendants are permanently enjoined from circumventing the advertising requirements of section 253 with respect to any future contracts for the construction of roads.

Plaintiff and defendants are directed to file within ten days from the date of this order a joint status report indicating whether road construction work has been commenced pursuant to the contract between defendants and Indian Nations Construction Company, and if so, the percentage of completion of the construction work under the contract. If the parties cannot agree on a joint status report each side will file such a report within the same ten day period.

Plaintiff is directed to file within ten days from the date of this order a brief setting forth the appropriate relief to be granted in this case by way of final judgment in accordance with the views expressed in this order and on the basis of the status of the construction work under the contract challenged in this action. Defendants will have ten days thereafter to file a response brief. The court is particularly concerned with the question of the appropriate equitable relief to be granted with respect to the unperformed balance, if any, of the construction contract in question and invites the parties to specifically address this issue in their briefs.

## ON MOTION FOR CLARIFICATION

In its order entered March 29, 1978, granting summary judgment in favor of the plaintiff and against the defendants, the court directed the parties to file briefs regarding the appropriate relief to be granted in this case by way of final judgment. The parties have filed such briefs. In addition, defendants have filed a motion for clarification, which motion is accompanied by a brief in support thereof.

Defendants seek clarification of the March 29, 1978 order with respect to the scope of the injunction issued and whether it is a preliminary or permanent injunction. Defendants request separate findings of fact and conclusions of law pursuant to Rule 52(a) Fed.R.Civ.P., and a description in reasonable detail of the acts sought to be restrained pursuant to Rule 65(d) Fed.R. Civ.P.

With respect to the proper relief to be granted in this case, plaintiff requests the court (1) to cancel the construction contract and have the unperformed balance submitted for competitive bidding; (2) to order Indian Nations Construction Company to refund all monies heretofore paid under the contract; and (3) to award plaintiff its costs and attorneys' fees incurred in this action.

Defendants admit that to declare the contract null and void constitutes a reasonable relief in this case in light of the summary judgment order, but they contend that it would not be proper for the court to order refund of monies paid by the defendants to Indian Nations for work heretofore performed under the contract and to permit plaintiff to recover attorneys' fees.

Defendants' status report reflects that 9.7 percent of the construction contract had been completed when the United States issued a stop order on March 31, 1978. Defendants state that Indian Nations has been paid only for work actually performed and that no money has been advanced to it for anticipated performance.

"Where performance has been entered upon under an illegal bargain the general rule is that the court will leave the parties to the illegal bargain as it finds them." J. Calamarie & J. Perillo, *The Law of Contracts* 567 (1970) (footnote omitted). However, in some instances quasi contractual recovery has been allowed in cases where there has been some performance under an illegal contract. *Id.* at 573.

■ The court hereby declares the road construction contract entered into between defendants and Indian Nations as null and void. *Schoenbrod v. United States,* 410 F.2d 400, 187 Ct.Cl. 627 (1969); J. Calamarie & J. Perillo, *The Law of Contracts* § 376 (1970). However, no refund is to be made of any sums heretofore paid under the contract. Even if the court could order a refund, which is doubtful since Indian Nations is not a party to this action, the court finds that it would be inequitable to require a refund of monies earned by Indian Nations for work performed in reliance upon and pursuant to the contract. *Cf. Prestex, Inc. v. United States,* 320 F.2d 367, 373, 162 Ct.Cl. 620, 626 (1963).

■ Plaintiff's request that the court order defendants to advertise the unperformed balance of the road construction contract is denied for the reason that it would constitute an improper interference with the executive branch. Defendants as members "of the executive branch of the United States . . . are not subject to supervision or direction by the courts as to how they shall perform the duties imposed by law upon them." *Giancana v. Hoover,* 322 F.2d 789, 790 (7th Cir. 1963). *See In re Daley,* 549 F.2d 469, 480 n. 11 (7th Cir. 1977), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1978).

Regarding plaintiff's request for costs and attorneys' fees the court notes initially that plaintiff will be free to file its bill of costs with the court clerk within the time limits prescribed by Local Rule 6 and in accordance with Rule 54(d) Fed.R.Civ.P. and 28 U.S.C. §§ 1920 and 2412. The taxability of costs is therefore not properly before the court at this time.

Turning to plaintiff's request for attorneys' fees the court notes that 28 U.S.C. § 2412 provides:

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title *but not including the fees and expenses of attorneys* may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation. Payment of a judgment for costs shall be as provided in section 2414 and section 2517 of this title for the payment of judgments against the United States. (Emphasis added.)

■ "The principle of sovereign immunity precludes the award of costs and fees against the United States 'in the absence of a statute directly authorizing it . . . .' " *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 168 U.S. App.D.C. 111, 113, 512 F.2d 1351, 1353 (1975). *See Parker v. Califano*, 182 U.S. App.D.C. 322, 327, 561 F.2d 320, 325 n. 15 (1977). Plaintiff has not cited any statute expressly authorizing attorneys' fees in a case of this type and the court is not aware of any such statute. Plaintiff instead relies on two equitable exceptions to the American rule pursuant to which attorneys' fees cannot be awarded to the successful litigant as a matter of course, *see* Note, 11 Tulsa L.J. 420 (1976), namely, the common fund doctrine and the private attorney general theory. The court is of the view that recovery of attorneys' fees cannot be had against the United States under the equitable exceptions to the American rule in light of the express prohibition contained in 28 U.S.C. § 2412. *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 168 U.S.App.D.C. 111, 113, 512 F.2d 1351, 1353 (1975). However, even if these equitable doctrines could furnish a basis for an award of attorneys' fees against the United States, the court must nevertheless conclude that plaintiff could not recover in this case under either the common fund doctrine or the private attorney general theory.

Although the common fund doctrine has been expanded considerably by recent Supreme Court decisions, *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), it requires that those benefited by the litigation be an ascertainable class. *See* Note, 11 Tulsa L.J. 420, 424–25, 428 n. 56 (1976). " 'It is necessary to determine . . . that it is plaintiff's effort which caused others to benefit.' " 6 J. Moore, *Federal Practice* Par. 54.77[2], at 1708 (2d ed. 1976) (footnote omitted). Plaintiff has not made the requisite showing here upon which the court could base such a determination.

Plaintiff cites several cases in support of its claim for attorneys' fees pursuant to the private attorney general theory, but fails to mention *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) in which the Supreme Court dealt a death blow to the private attorney general theory. *See* Note, *Alyeska Pipeline Service Co. v. Wilderness Society: The Demise of the Private Attorney General Theory as a Basis for Awarding Attorneys' Fees in Public Interest Litigation*, 11 Tulsa L.J. 420 (1976). That theory is therefore no longer a viable exception to the American rule except as it has been revived in the areas of civil rights and taxation with the passage of the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L.No.94–559, 90 Stat. 2641, codified in 42 U.S.C. § 1988.

In a supplemental brief filed on May 10, 1978, plaintiff concedes that *Alyeska* repudiated the private attorney general theory. Plaintiff points out, however, that *Alyeska* specifically recognizes the common fund doctrine and plaintiff contends that it is entitled to its attorneys' fees pursuant to a reimbursement plan similar to the one sug-

gested by the Court of Appeals for the District of Columbia Circuit in *National Treasury Employees Union v. Nixon,* 172 U.S.App.D.C. 217, 521 F.2d 317 (1975). The court notes however, that the government in that case was said to have conceded that 28 U.S.C. § 2412 was not directly applicable because the request for attorneys' fees was based on reimbursement from employees benefited by pay adjustments on account of plaintiff's suit and not on reimbursement from the public treasury. *Id.* at 219, 521 F.2d at 319.

Defendants in the instant case cannot be said to have made such a concession. Furthermore, the court cannot ascertain in this case the class which plaintiff claims it has benefited as the court was able to with respect to the federal employees who were entitled to a pay raise in *Nixon.* The court would have to engage in speculation in this case in order to ascertain which contractors might have been or would be awarded which road construction contract. The *Nixon* case is therefore not controlling here. Moreover, the District of Columbia Circuit has held in two cases subsequent to *Nixon* that absent specific statutory authorization section 2412 bars recovery of attorneys' fees against the United States and that the common fund doctrine does not avoid the bar of section 2412 when an award of attorneys' fees would in effect have to be satisfied out of government funds. *Pealo v. Farmers Home Administration,* 183 U.S.App.D.C. 225, 562 F.2d 744 (1977); *National Council of Community Mental Health Centers, Inc. v. Mathews,* 178 U.S.App.D.C. 237, 546 F.2d 1003 (1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977).

The court accordingly concludes that 28 U.S.C. § 2412 bars an award of attorneys' fees in this case, and that even in the absence of such a statutory bar, plaintiff could not recover attorneys' fees either under the private attorney general theory or the common fund doctrine. Plaintiff's request for attorneys' fees is in all respects denied.

■ Defendants' motion for clarification is directed toward the following paragraph of the court's order of March 29, 1978 granting summary judgment:

Defendants are hereby enjoined from continuing to circumvent the advertising requirements of 41 U.S.C. § 253 in connection with the road construction contract awarded to Indian Nations Construction Company. Defendants are permanently enjoined from circumventing the advertising requirements of section 253 with respect to any future contracts for the construction of roads.

Defendants state that there is disagreement as to the meaning of the first sentence in light of the fact that no further advertising is anticipated in the road construction project and since it is not clear whether it constitutes a preliminary or a permanent injunction. Defendants suggest that the injunctive relief ordered in the above paragraph is preliminary and request separate findings of fact and conclusions of law pursuant to Rule 52(a) Fed.R.Civ.P., and a description in reasonable detail of the acts sought to be restrained pursuant to Rule 65(d) Fed.R.Civ.P.

The injunctive relief is part of the final judgment entered this day and constitutes permanent injunctive relief. Defendants are accordingly now in a position to file their notice of appeal. With respect to defendants' request for separate findings the court notes that Rule 52(a) provides:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered

as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. *Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).* (Emphasis added.)

This matter was before the court on motions for summary judgment by both plaintiff and the defendants under Rule 56. There has been full compliance with the rules.

 The court is further convinced that the injunctive relief ordered satisfies the detail requirements of Rule 65(d) and that its meaning is clear. By virtue of the injunctive relief granted in this case defendants are simply commanded to follow the proper procedure in awarding road construction contracts in conformity with the applicable statutes as interpreted in the court's order of March 29, 1978. Defendants are correct when they state that they are not subject to judicial supervision regarding the manner in which they are to perform their responsibilities and exercise their judgment and discretion as members of the executive branch of government. *In re Daley*, 549 F.2d 469, 480 n. 11 (7th Cir. 1977), *cert. denied*, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1978). *Giancana v. Hoover*, 322 F.2d 789 (7th Cir. 1963). Obviously, the permanent injunction issued in this case does not in any manner, whatsoever, impinge upon such executive department functions of the defendants, but merely enjoins them from violating applicable statutory provisions, if and when they decide to enter into road construction contracts.

ORDERED this 12th day of May, 1978.

### FINAL JUDGMENT

In conformity with the court's orders entered in this action on March 29, 1978 and on this date, it is hereby ordered, adjudged and decreed

(1) that the road construction contract entered into between defendants and Indian Nations Construction Company is null and void;

(2) that no refund is to be made of any sums heretofore paid under the contract to Indian Nations Construction Company;

(3) that defendants are permanently enjoined from circumventing the advertising requirements of 41 U.S.C. § 253 in connection with future road construction contracts.

ORDERED this 12th day of May, 1978.