GLOVER CONSTRUCTION
COMPANY, Appellee,

v.

Cecil ANDRUS, Secretary of the Department of Interior, Department of Interior, Bureau of Indian Affairs, and A. E. Green, Appellants.

No. 78–1554.

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 27, 1978.

Decided Jan. 11, 1979.

Rehearing Denied March 12, 1979.

---

Charles E. Biblowit, Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Washington, D. C., Julian K. Fite, U. S. Atty., Betty Outhier Williams, Asst. U. S. Atty., Muskogee, Okl. and Robert L. Klarquist, Dept. of Justice, Washington, D. C., on brief), for appellants.

D. D. Hayes of Bonds, Matthews & Bonds, Muskogee, Okl., for appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

The United States, by and through Cecil Andrus, Secretary of the Department of the Interior, et al., (Government) appeals from a summary judgment entered on behalf of Glover Construction Company (Glover), a non-Indian owned contracting company, setting aside and rendering null and void a road construction contract awarded by the Government, through the Bureau of Indian Affairs (BIA), to Indian Nations Construction Company (Indian Construction), an Indian owned company. The contract was let for the reconstruction of five miles of roadway in Pushmataha County, Oklahoma.

The facts are not in dispute. In March of 1976, Government, through the Commissioner of the BIA, issued a memorandum designated as 20 BIAM Bulletin 1 interpretive of the Buy-Indian Act, 25 U.S.C.A. § 47.[1] The memo provides that bidding on contracts with the BIA is restricted or confined to Indian owned companies. Non-Indian owned companies are permitted to bid only if Indian owned companies are not available to bid or do not bid. Prior to May 25, 1977, the BIA invited three Indian owned construction companies to submit bids on a contract for reconstruction of five miles of existing roadway as provided by 41 CFR § 1–3.215(a) pursuant to the Buy-Indian Act, *supra*. The contract was awarded on May 25, 1977, to Indian Construction, whose bid was $1,219,481.00. No attempt was made by the Government to publicly advertise for bids pursuant to 41 U.S.C.A. § 253,[2] popularly known as the Federal

---

1. 25 U.S.C.A. § 47 provides:

   Employment of Indian labor and purchase of products of Indian industry

   So far as may be practicable Indian labor shall be employed, and purchases of the products of Indian industry may be made in open market in the discretion of the Secretary of the Interior. Apr. 30, 1908, c. 153, 35 Stat. 71; June 25, 1910, c. 431, § 23, 36 Stat. 861.

2. 41 U.S.C.A. § 253 provides:
   Advertising requirements
   Whenever advertising is required—
   (a) The advertisement for bids shall be made a sufficient time previous to the purchase or contract, and specifications and in-

Property and Administrative Services Act of 1949, in relation to its application to the relevant provisions of 41 U.S.C.A. § 252.[3] No contentions are advanced by Government that the contract here involved was subject to negotiation under the exceptions of paragraphs (1), (3), (10), (12) or (14) of subsection (c) of § 252, *supra.*

Glover contends that the Government violated 41 U.S.C.A. § 5 which provides that purchases and contracts for supplies or services for the Government may be made or entered into only after advertising a sufficient time previously for proposals, except (1) when the amount involved does not exceed $2,500.00, (2) when the public exigencies require the immediate delivery of the articles or performance of the service, (3) when only one source of supply is available and the Government officer shall so certify, or (4) when the services are required to be performed by the contractor in person and are of a technical or professional nature or under Government supervision and paid for on a time basis. 41 U.S.C.A. § 5 was originally enacted in 1946. 60 Stat. 809.

Further, Glover contends that the Government was required to publicly advertise for bids pursuant to 41 U.S.C.A. § 253, *supra,* and that the BIA's contracting procedure giving preference to Indians violated Glover's rights to equal protection and due process of law. The Government contends that the contracting procedure is authorized by the Buy-Indian Act, *supra,* and that it is constitutional.

The District Court did not reach the constitutional contentions. The Court did conclude, however, that under the terms of the Federal Property Act, 41 U.S.C.A. § 252, the Buy-Indian Act, 25 U.S.C.A. § 47, could not be applied to road construction contracts; that the contract awarded Indian Construction was null and void; and that the Government (Interior-BIA) should be enjoined from entering into any future road construction contracts without complying with the public advertising requirements.

On appeal, Government contends that the District Court erred in finding and concluding that the BIA (Government) may not enter into road construction contracts with Indian owned contracting companies without publicly advertising for bids pursuant to 41 U.S.C.A. § 253.

The District Court saw the issues framed as follows: In 1976 the BIA implemented its "new" interpretation of the "Buy-Indian Act," *supra,* (which Act had been in effect since 1910) under which the BIA entered into contractual negotiations with wholly

---

vitations for bids shall permit such full and free competition as is consistent with the procurement of types of property and services necessary to meet the requirements of the agency concerned . . .

(b) All bids shall be publicly opened at the time and place stated in the advertisement. Award shall be made with reasonable promptness by written notice to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the Government, price and other factors considered: *Provided,* That all bids may be rejected when the agency head determines that it is in the public interest to do so. June 30, 1949, c. 288, Title III, § 303, 63 Stat. 395; July 12, 1952, c. 703, § 1(m), 66 Stat. 594.

**3.** 41 U.S.C.A. § 252 provides:
 \*     \*     \*     \*     \*     \*
Negotiated purchases and contract for property; conditions

(c) All purchases and contracts for property and services shall be made by advertising, as provided in section 253 of this title, except that such purchases and contracts may be negotiated by the agency head without advertising if—

(10) for property or services for which it is impractical to secure competition.

(15) otherwise authorized by law, except that section 254 of this title shall apply to purchases and contracts made without advertising under this paragraph.
Exceptions to this section

(e) This section shall not be construed to: (A) authorize the erection, repair, or furnishing of any public building or public improvement, but such authorization shall be required in the same manner as heretofore, or (B) *permit any contract for the construction or repair of* buildings, *roads,* sidewalks, sewers, mains, or similar items *to be negotiated without advertising as required by Section 253 of this title, unless such contract is to be performed outside the continental United States or unless negotiation of such contract is authorized by the provisions of paragraphs (1)—(3), (10)—(12), or (14) of subsection (c) of this title.*" (Emphasis supplied.)

owned Indian companies for road construction projects without complying with the advertising requirements of 41 U.S.C.A. §§ 5 and 253; under the "new" interpretation, bids are to be taken only among Indian owned contracting companies and non-Indian contractors are to be contacted and considered for road construction projects only after it has been determined that there are no qualified Indian contractors within the normal competitive area; Government claims that the "new" policy interpretive of the Buy-Indian Act falls within the "otherwise authorized by law" exception to advertising provided by 41 U.S.C.A. § 253(c)(15);[4] Glover contends that 41 U.S.C.A. § 252(e) fails to exempt contracts for the construction of roads from the advertising requirements, since it expressly exempts 41 U.S.C.A. § 252(c)(1)–(3), (10)–(12), and (14) but does not refer to subsection (15); the parties agree that 41 U.S.C.A. §§ 252 and 253 apply to the BIA.

█ The District Court ruled that the procedure followed by the BIA in awarding the road construction contract to Indian Construction contravenes the requirements of 41 U.S.C.A. §§ 252 and 253. We agree. The District Court's order is, in our view, worthy of quotation in pertinent part, to-wit:

> Section 252(c) makes all purchases and contracts for property and services *subject to the advertising requirements* of section 253 *unless* they come within any of the fifteen enumerated exceptions. Defendants contend that the Buy Indian Act comes within subsection (15). There is no contention that any of the other fourteen exceptions apply in this case. Subsection (e)(B) specifically provides that section 252 shall *not* be construed to permit any contract for the construction of roads to be negotiated *without advertising* as required by section 253 unless the contract is to be performed outside the continental United States or *unless* negotiation of such contract is authorized by the provisions of paragraphs (1)–(3), (10)–(12), or (14) of subsection (c).

Defendants' argument that subsection (e) is an admonition rather than a prohibition and that subsection (c)(15) authorizes negotiation of road construction contracts under the Buy Indian Act is unpersuasive. Congress saw fit to specifically exempt *seven subsections* of section 252(c) from the advertising requirements with respect to road construction contracts and did *not* include the "otherwise authorized by law" provision of subsection (c)(15) within this category. This is the subsection on which defendants rely.

The effect of the enumeration of express exceptions in a statute has been stated as follows:

> The specification by the legislature of exceptions to the operation of a general statute, does not necessarily operate to preclude the court from applying other exceptions. However, where express exceptions are made, the legal presumption is that the legislature *did not intend to save other cases from the operation of the statute.* Thus, the rule generally applied is that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions or the enlargement of exceptions made. Under this principle, where a general rule has been established by a statute with exceptions, the courts will not curtail the former, nor add to the latter, by implication. (Emphasis added.)

73 Am.Jur.2d *Statutes* § 316 (1974) (footnotes omitted). The court accordingly concludes that contracts for the construction of roads, such as the contract involved in the instant action, are *not* excepted from the advertising requirements of section 253 by virtue of section 252(c)(15).

---

4. Even though the parties have not referred to the provisions of § 254, *supra,* we observe that Congress has restricted the availability of the "otherwise authorized by law" exception to

§ 252(c). We do not here decide the applicability of this section to the disposition of the instant case.

Defendants contend, however, that the Buy Indian Act has been interpreted for many years as authorizing construction contracting with invitations to bid restricted to Indian contractors, and that this administrative construction of the statute is entitled to great weight. Plaintiff contends that 20 BIAM Bulletin 1 of March 3, 1976 (Exhibit D to defendants' brief) represents a new policy, and even if not new, that the statutory interpretation therein espoused is entitled to little or no weight since it is not a contemporaneous statutory construction.

Defendants' exhibits establish at best that the interpretation set forth in the 1976 bulletin may date back as far as 1961. Assuming this to be true for the purpose of plaintiff's summary judgment motion it does not follow that such interpretation is entitled to be given great weight, or any weight, upon the question of the proper statutory interpretation.

Defendants rely on *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), and *United States v. Jackson,* 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361 (1930) for the general rule of statutory construction that "great weight is properly to be given to the construction consistently given to a statute by the Executive Department charged with its administration." 280 U.S. at 193, 50 S.Ct. 143. The Court emphasized in *Udall,* however, that the Secretary had consistently construed the executive order and public land order there involved since their promulgation and that this interpretation had been made a repeated matter of public record. 380 U.S. at 4, 17, 85 S.Ct. 792. Furthermore, the Supreme Court has recognized that

> [i]t has been held in many cases that a definitely settled administrative construction is entitled to the highest respect; and, if acted on for a number of years, such construction will not be disturbed except for cogent reasons. See e. g. *Logan v. Davis,* 233 U.S. 613, 627, 34 S.Ct. 685, 58 L.Ed. 1121. But the court is not bound by a construction so established. *Chicago etc. Ry. Co. v.*

*McCaull-Dinsmore Co.,* 253 U.S. 97, 99, 40 S.Ct. 504, 64 L.Ed. 801. *United States v. Dickson,* 15 Pet. 141, 161, 10 L.Ed. 689. *The rule does not apply in cases where the construction is not doubtful.* And if such interpretation has not been uniform, it is not entitled to such respect or weight, but will be taken into account only to the extent that it is supported by valid reasons. *Brown v. United States,* 113 U.S. 568, 571, 5 S.Ct. 648, 28 L.Ed. 1079. *Merritt v. Cameron,* 137 U.S. 542, 551–552, 11 S.Ct. 174, 34 L.Ed. 772. *United States v. Alabama Railroad Co.,* 142 U.S. 615, 621, 12 S.Ct. 306, 35 L.Ed. 1134. *United States v. Healey,* 160 U.S. 136, 145, 16 S.Ct. 247, 40 L.Ed. 369. *Studebaker v. Perry,* 184 U.S. 258, 268, 22 S.Ct. 463, 46 L.Ed. 528. *Houghton v. Payne,* 194 U.S. 88, 99, 24 S.Ct. 590, 48 L.Ed. 888.

*United States v. Missouri Pacific R.R.,* 278 U.S. 269, 280, 49 S.Ct. 133, 73 L.Ed. 322 (1929) (emphasis added). The Court has also said:

> True indeed it is that administrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction. True it also is that administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful. *United States v. Moore,* 95 U.S. 760, 763, 24 L.Ed. 588; *Logan v. Davis,* 233 U.S. 613, 627, 34 S.Ct. 685, 58 L.Ed. 1121; *Brewster v. Gage,* 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457; *Fawcus Machine Co. v. United States,* 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; *Interstate Commerce Commn. v. N. Y., N.H. & H.R. Co.,* 287 U.S. 178, 53 S.Ct. 106, 77 L.Ed. 248. The practice has peculiar weight when it involves a *contemporaneous* construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new. *Fawcus Machine Co. v. United States, supra.* (Emphasis added.)

*Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933). And, the Supreme Court further stated in *Missouri Pacific:*

> The language of that provision is so clear and its meaning so plain that no difficulty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. *It is elementary that where no ambiguity exists there is no room for construction.* Inconvenience or hardships, if any, that result from following the statute as written must be relieved by legislation. . . .
> Construction may not be substituted for legislation. *United States v. Wiltberger,* 5 Wheat. 76, 95–96, 5 L.Ed. 37. *United States v. Fisher,* 2 Cranch 358, 386, 2 L.Ed. 304. *Lake County v. Rollins,* 130 U.S. 662, 670, 9 S.Ct. 651, 32 L.Ed. 1060. *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442. *Ex parte Public National Bank, ante,* 278 U.S. p. 101, 49 S.Ct. 43, 73 L.Ed. 202. *United States v. Colorado & N.W.R. Co.,* D.C.Colo., 157 F. 321, 327.
>  . . . Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure and other like extraneous matter may be taken into consideration to aid in the ascertainment of the true legislative intent. But where the language of an enactment is clear and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed. *United States v. Freight Ass'n,* 166 U.S. 290, 325, 17 S.Ct. 540, 41 L.Ed.

> 1007. *Pennsylvania R.R. v. International Coal Co.,* 230 U.S. 184, 199, 33 S.Ct. 893, 57 L.Ed. 1446. *Mackenzie v. Hare,* 239 U.S. 299, 308, 36 S.Ct. 106, 60 L.Ed. 297. *Caminetti v. United States, supra,* 242 U.S. 490, 37 S.Ct. 192.

278 U.S. at 277–78, 49 S.Ct. 133 (emphasis added).

The court is of the view that construction of section 252(c) & (e) is not doubtful and that the rule of deference by the court to an administrative interpretation has therefore no application in this case. Moreover, even if the rule were applicable, defendants have not shown or even contended that the policy challenged in this action has been in effect prior to 1961. The Buy Indian Act has been in effect since 1910 and 41 U.S.C. §§ 252 and 253 have been in effect since 1949. There is accordingly no contemporaneous interpretation involved in this case. It was held in *United States v. Manzi,* 16 F.2d 884 (1st Cir. 1926) that a construction not adopted by the department until after a statute had been in operation for fourteen years was entitled to little or no weight upon the question of the proper interpretation of the statute. *See also Citizen Band of Potawatomie Indians of Oklahoma v. United States,* 391 F.2d 614, 621, 179 Ct.Cl. 473 (1967), *cert. denied,* 389 U.S. 1046, 88 S.Ct. 771, 19 L.Ed.2d 839 (1968).

For all of the foregoing reasons and on the basis of the authorities heretofore discussed the court concludes that defendants' procedure in connection with awarding the road construction contract involved in this case contravenes the advertising requirements of 41 U.S.C. §§ 252 & 253. Summary judgment is accordingly granted in favor of the plaintiff and against the defendants. Defendants' cross-motion for summary judgment is denied.

[R., Vol. I, pp. 30–33; 451 F.Supp. 1102 at pp. 1106–1108.]

Government's main thrust is that the subject contract does fall within the enumerated exceptions to the advertising require-

ment, and that, in any event, the list of exceptions contained in 41 U.S.C.A. § 252(e) was not intended to preclude dispensing with the advertising requirements where independent statutory authority (the Buy-Indian Act) exists. Inasmuch as the Buy-Indian Act is not mentioned or referred to in the Federal Property Act, the Government argues that ". . . the district court must necessarily have concluded that Section 302(e) of the Federal Property Act, 41 U.S.C. 252(e), repealed the Buy-Indian Act in regard to construction and repair contracts only by implication." [Brief of Appellant, p. 8.] This argument, in our view, "misses the mark." The District Court made no reference to the rule relating to repeal by implication of law. The rule does not come into play here simply because, contrary to the Government's claim, *nothing* in the Buy-Indian Act speaks to or directly mentions roadway construction projects. The Government thus would have us construe the language in the Buy-Indian Act directing purchase of "Indian supplies" and "products" on the "open market" as directly and unequivocally relating to a contract covering a roadway construction project. In pressing the point, the Government relies on *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) and *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) for the rule that statutes passed for the benefit of dependent Indian tribes are to be liberally construed and doubtful expressions resolved in favor of the Indians. The *Morton* case involved the issue whether a provision allowing an employment preference to Indians under the Indian Reorganization Act of 1934 was impliedly repealed by Section 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C.A. § 2000e–16(a), which provides that all personnel actions affecting employment in most federal agencies must be made free from discrimination based on race, color, religion, sex or national origin. The Supreme Court held that the latter act did not repeal the former by implication because—and this is critical—the Indian Reorganization Act of 1934 was of a long-standing preference and an important com-

ponent of the Government's Indian policy. Thus, the Court refused to hold that the provisions of the EEOC Act of 1972 repealed by implication of law the preference provisions of the Indian Reorganization Act. Significantly, the Supreme Court observed that this could come to pass only if the two statutes are *entirely irreconcilable*. Such was not the case in *Morton v. Mancari*, *supra*. The hiring preferences provided for under the Indian Reorganization Act of 1934 exempted Indians from the Civil Service laws and thus the Act spoke directly to the *same subject matter* as that addressed in the EEOC Act, i. e., employment by federal agencies. It would, in our view, require a considerable "stretch of the imagination" to conclude that the Congress intended the Buy-Indian Act to apply to road construction projects. It is clear, *on its face*, however, that the Congress did intend that 41 U.S.C.A. §§ 252 and 253 apply to road construction projects.

We agree with Glover's analysis of the "faulty premises" upon which the Government predicates its argument that the contract awarded to Indian Construction was authorized by subsection 15 of Section 252(c), *supra* :

. . . *First*, the proposition must be accepted that 25 U.S.C., Sec. 47 embraces roadway construction contracts, which it doesn't. *Second*, the proposition must be accepted that the language of the statute which states, "this section shall not be construed . . . to permit any contract for the construction or repair of . . . roads . . . to be negotiated without advertising as required by section 253 of this title . . .", really just doesn't mean what it says, and apparently, just doesn't mean anything at all. *Third,* the proposition must be accepted that the proviso within the exception which specifically excludes paragraph (1)–(3), (10)–(12), or (14) of 252(c), but *omits* to exclude paragraph (15) is likewise without significance and can be disregarded. [Brief of Appellee, p. 11.]

There is nothing in the language of the Buy-Indian Act or its legislative history

which suggests that it was intended to apply to roadway construction projects. As if anticipating the "roadblock" created thereby, the Government attempts to gain a legal "foothold" by relating that the solicitor of the Department of the Interior rendered an opinion on April 27, 1971, entitled "Negotiability of Construction Contracts under the 'Buy-Indian' Act of June 25, 1910" which confirmed the administrative interpretation of the Act going back to about 1961. This opinion concluded that the enumerated exceptions in 41 U.S.C.A. § 252(c) and (e) were not intended to preclude dispensing with public advertising under the authority of the Buy-Indian Act. The Government states that the District Court failed to give any deference to the Department of the Interior's "long-standing" construction of the Buy-Indian Act. Our response is that if the Government's administrative interpretation is entitled to the deference urged, the Congress is the branch before whom the point should be pressed. We have heretofore stated that this Court shall not, under its classical adjudicative power, undertake to legislate. In conjunction therewith, we have held that statutes are to be construed in a manner so as to effectuate the intent of the enacting body, and that an unambiguous statute must be given its plain and obvious meaning. *United States v. Ray*, 488 F.2d 15 (10th Cir. 1973); *United States v. Western Pacific Railroad Company*, 385 F.2d 161 (10th Cir. 1967), *cert. denied*, 391 U.S. 919, 88 S.Ct. 1805, 20 L.Ed.2d 656 (1968).

When the Congress was dealing with the Federal Property and Administrative Services Act of 1949, 41 U.S.C.A. §§ 252 and 253, it was deemed to be fully cognizant of the Buy-Indian Act of 1910. The Congress was, accordingly, capable of clearly and directly providing the interpretation of the Buy-Indian Act here urged by the Government. The fact is that it did not elect to do so. This Court cannot "fill the gap" by engaging in judicial law-making. *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890 (10th Cir. 1972), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972); *McCord v. Dixie Aviation Corporation*, 450 F.2d 1129

(10th Cir. 1971). In our view, we are here dealing with a political question beyond the jurisdiction of the courts. *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

A statute must be construed as it was intended to be understood when enacted in the light of conditions as they then existed. *United States v. Stewart*, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940). Assuming, *arguendo*, the truth of the Government's contention that there were no Indian owned companies engaging in roadway construction in 1910 when the Buy-Indian Act was passed, still we observe that this contention is not advanced in relation to 1949 when the Federal Property Act was passed. In any event, we do not place particular weight on this matter.

Words of a statute are to be interpreted in their ordinary definitions and in the meanings commonly attributed to them. *Jones v. Liberty Glass Company*, 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142 (1947). Even where there are two statutes on the same subject, the earlier being *special* and the later being *general* the special act controls as effective and all matters coming within the scope of the special statute are governed by its provisions. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Missouri K & T Ry. Co. v. Jackson*, 174 F.2d 297 (10th Cir. 1949); Sutherland, Statutory Construction, 4th Ed., Vol. 2A, § 51.05. In Sutherland, *supra*, the rule is stated:

General and special acts may be in pari materia. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling. In the language of a court: "It is the general rule that where the general statute standing alone would

include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication." (Footnotes omitted.)

Government vigorously contends that its interpretive preference, which led to the grant of the non-competitive award of the roadway construction project to Indian Construction is based upon the *remedial* aspects of the Buy-Indian Act, to-wit: Furtherance of a ". . . longstanding and important component of the Government's Indian policy designed to enable Indians to obtain jobs without having to compete on equal terms with non-Indians." [Brief of Appellants, p. 9.] We recognize that the remedial Buy-Indian Act is to be given a liberal construction in order to effectuate the purpose for which it was enacted. Sutherland, Statutory Construction, 4th Ed., Vol. 3, § 60.01. Even so, we believe that it strains the most liberal interpretation to conclude that the Act's preference for purchase of "Indian supplies" and "products" applies to a roadway reconstruction project whose contract price, through Indian Construction, is $1,219,481.00. The strain is the more "painful" when we consider that the Government engineer's estimate for the project was $963,117.48 and that Glover completed the first five miles of the reconstruction project, under normal competitive

bidding procedures, for $538,000.00. While we do not represent or pretend that these comparative figures control in determining the reasonableness of the Indian Construction non-competitive contract price of $1,219,481.00, we do observe that a primary, significant *remedial* feature of the advertisement and competitive bidding requirements of the Federal Property and Administrative Services Act of 1949 is to obtain the best and lowest bid for the benefit of the American taxpayers in "high cost" construction categories. In that sense we observe that this Court has held that a statutory exception should be strictly construed so that the exception does not devour the general policy which the law embodies. *Edward B. Marks Music Corp. v. Colorado Mag., Inc.,* 497 F.2d 285 (10th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975).

WE AFFIRM.

McKAY, Circuit Judge, dissenting:

By rigidly adhering to formalistic rules of statutory construction, today's opinion reaches a result hostile to the remedial purposes of the Buy Indian Act. Inasmuch as the relevant rules of statutory construction could be applied in a reasonable manner to reach a result more in keeping with national policy priorities, I am compelled to dissent.[1]

The real issue in this case is the extent to which the Buy Indian Act, 25 U.S.C. § 47 (1976), retains vitality in light of the advertising requirements of the Federal Property Act, 41 U.S.C. §§ 252, 253 (1976). In order to understand the tension between the provisions, it will be helpful to consider the

---

1. In addition to dissenting from the majority's decision on the merits, I take exception to the statement that this case involves a political question over which we have no jurisdiction. The "political question" doctrine holds as nonjusticiable under the separation of powers concept cases involving matters which have been committed by the Constitution to another branch of government. *Baker v. Carr,* 369 U.S. 186, 210, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). These cases typically involve such matters as foreign relations, procedures for ratifying constitutional amendments, and the republican

form of government guaranty. 369 U.S. at 211, 214, 218, 82 S.Ct. 691. The suggestion that the instant case involves a political question would appear to be novel. It certainly is not supported by *Baker v. Carr,* cited by the majority, in which the Supreme Court found the issue under consideration there not to be a political question. In any event, to the extent this case is said to involve a *policy* question, it is sufficient to observe that Congress has already decided it in favor of Indians by enacting the Buy Indian Act.

purposes, history and applications of the Buy Indian Act.

The Buy Indian Act announces a congressionally approved policy of preferring Indian labor and products and grants the Interior Secretary discretionary power to purchase Indian products in the open market. Pursuant to this authority, the Secretary has authorized the negotiation of contracts with Indians to the exclusion of non-Indians. 41 C.F.R. § 14H–3.215.70 (1977). One result has been the development of a program under which the Interior Department has awarded millions of dollars in road construction contracts to Indian contractors. This program has provided substantial economic encouragement to Indian construction enterprises. The program is emasculated by today's opinion.

The obvious purpose of the Buy Indian Act is to encourage Indian economic development by freeing Indian industry from the competitive strictures of advertised bidding requirements. Its laudable goal is furthering the economic progress of a disadvantaged people. While the legislative history of the Buy Indian Act is rather scanty, it nonetheless manifests a clear purpose to except purchases of Indian products from advertising requirements. In 1910 changes were made in the legislation containing the earliest version of the language now preserved in the Act. Some of the legislative commentary on the proposed changes demonstrates the purpose of the Buy Indian Act itself.

In relevant part, the language of the 1910 proposed amendment reads as follows:

That hereafter the purchase of Indian supplies shall be made in conformity with the [advertising] requirements of section 3709 of the Revised Statutes of the United States: *Provided*, That so far as may be practicable Indian labor shall be employed and purchases of the products of Indian industry may be made in open market, in the discretion of the Secretary of the Interior. All acts and parts of acts in conflict with the provisions of this section are hereby repealed.

H.R. 24992, 61st Cong., 2d Sess. § 28 (1910), 45 Cong.Rec. 6097 (1910). This section of the bill was virtually identical to the version ultimately enacted. Act of June 25, 1910, Pub.L.No. 313, § 23, 36 Stat. 861 (1910).

Prior to the passage of the amendment, the House Committee on Indian Affairs commented on its purpose and compared it to the version being amended:

The purpose of this section is patent from the text. If this section shall be enacted into law it will repeal the following portion of the act of April 30, 1908 (35 Stat., 71):

[Indian appropriation act, April 30, 1908 (35 Stat., 71).]

That no purchase of supplies for which appropriations are herein or hereinafter made for the Indian service, exceeding in the aggregate five hundred dollars in value at any one time, shall be made without first giving at least three weeks' public notice by advertisement, except in case of exigency, when, in the discretion of the Secretary of the Interior, who shall make official record of the facts constituting the exigency, and shall report the same to Congress at its next session, he may direct that purchases may be made in open market in amount not exceeding three thousand dollars at any one purchase: *Provided*, That hereafter supplies may be purchased, contracts let, and labor employed for the construction of artesian wells, ditches, and other works for irrigation, not to exceed the sum of five thousand dollars in any one purchase or contract, in the discretion of the Secretary of the Interior, without advertising as hereinbefore provided: *Provided further*, That as far as practicable Indian labor shall be employed and purchase in the open market made from Indians, under the direction of the Secretary of the Interior.

With the exceptions noted in the proviso, it will bring the Indian Service, like all other branches of the public service, under the provisions of section 3709 of the

Revised Statutes of the United States, which reads as follows:

[Section 3709, Revised Statute.]

Sec. 3709. All purchases and contracts for supplies or services, in any of the departments of the Government, except for personal services, shall be made by advertising a sufficient time previously for proposals respecting the same, when the public exigencies do not require the immediate delivery of the articles, or performance of the service. When immediate delivery or performance is required by the public exigency, the articles or service required may be procured by open purchase or contract, at the place and in the manner in which such articles are usually bought and sold, or such services engaged between individuals.

H.R.Rep.No. 1135, 61st Cong., 2d Sess. 12 (1910) (bracketed material in original). The "exceptions noted in the proviso" constituted the substance of the Buy Indian Act as it now appears. The significance of the proviso is apparent: It excepted Indian products from the strictures of the advertising statute then in effect.[2]

The perpetuation of the proviso's language into the present era indicates that the purpose is still of significance. In light of the Act's legislative history and for the policy reasons underlying the Act itself, purchases of Indian products should be governed by that Act and should not be subject to standard advertising requirements not made explicitly applicable to otherwise exempted Indian products.

Despite the message of the legislative history, and despite the remedial purposes of the Act, the majority concludes that the Interior Department's road construction program is illegal. It makes this conclusion by determining that there is no conflict between the Buy Indian Act and the Federal Property Act's advertising requirements. This determination depends, in turn, on the majority's view that because nothing in the language of the Act or in its legislative history indicates it was intended to apply to road construction projects, the term "products of Indian industry" does not include Indian built roads. Implicit in this conclusion is the troubling notion that because a particular economic activity is not mentioned in the Act or in its legislative history, that activity is not covered. Such a construction may make the Act applicable to nothing at all.[3]

Alternatively, the majority may be suggesting that only those Indian activities conducted in 1910 are covered by the Act.[4] The record does not inform us whether Indian road construction enterprises existed in that year.[5] Regardless of this latter fact, the thrust of this rationale would have the effect of restricting the Act's application to activities of a 1910 vintage—which is hardly a reasonable way to encourage significant economic development in a modern market context.[6] There is no indication Congress

2. In this regard, it is noteworthy that this particular amendment was motivated, at least in part, by an intention to prevent abuses in the purchase of supplies for Indians. It seems that many purchases had been accomplished by skirting the advertising requirements then in effect. While the amendment sought to strengthen generally the advertising requirement, an exception was expressly included for purchases of Indian products. 45 Cong.Rec. 6097 (1910) (remarks of Rep. Burke).

3. Congress often casts "statutory provisions in general terms, leaving to the agency the task of spelling out the specific regulations and programs." *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 703 (5th Cir. 1973), *cert. denied*, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974).

4. The opinion contends that the Interior Department's longstanding interpretation of the Act is not persuasive because that interpretation was not articulated in 1910.

5. Legislative history does indicate that Indians participated in reservation road construction projects during this period. *See* Letter from James Rudolph Garfield, Secretary of the Interior, to Senator Moses E. Clapp (Feb. 19, 1908), *reprinted in* S.Rep.No.278, 60th Cong., 1st Sess. 18–19 (1908).

6. The majority's concern about noncontemporaneous interpretations of the Act fails to consider the often unavoidable generality of statutory language. See note 3, *supra*. It also begs the more pertinent question whether the Act as passed in 1910 gave the Secretary authority to

intended the preferential treatment to be limited to economic activities Indians were involved in at the time of enactment. Indeed, the Act's very purpose is to encourage Indian economic enterprises that would suffer in a competitive context. The view of the Act expressed in today's opinion threatens to relegate it to a role of protecting Indian handicraft and trinket production— economic activities that probably require no preferential treatment at all.

Today's opinion ignores the Supreme Court's clear instructions on statutory construction where Indians are involved. Writing for a unanimous Court in *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), Mr. Justice Brennan characterized as an "eminently sound and vital canon" the proposition that "statutes passed for the benefit of [Indians] are to be liberally construed, doubtful expressions being resolved in favor of the Indians." 426 U.S. at 392, 96 S.Ct. at 2112. It seems to me that we have done just the opposite in this case. I am perplexed by the court's unwillingness to apply the label "product of Indian industry" to highways produced by Indian companies. I am certain the majority would have had little difficulty determining that Indian blankets and beads are products of Indian industry. Indeed, counsel for Glover Construction admitted in oral argument that a multimillion dollar computer would be an Indian product if it were manufactured by an Indian company. I fail to see why an Indian built road is not an Indian product. I simply do not understand why we decline to apply the meaning of the word "product" in a way that actually does some good.[7]

My view of the Buy Indian Act does result in apparent conflict between it and the advertising requirements of the Federal Property Act. If this conflict is to result in a resolution that applies the advertising provisions to Indian roadway construction contracts, then to this extent the Buy Indian Act will have been repealed by implication. It seems to me that a much more sensible outcome could be obtained. An example of such an outcome appears in the Supreme Court's opinion in *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

The *Morton v. Mancari* case presented the question whether the Indian employment preference provision of the Indian Reorganization Act, 25 U.S.C. § 472, was impliedly repealed by Section 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(a). This section of the Employment Act requires federal agencies to make personnel actions without regard to race, color, religion, sex or national origin. Thus a conflict was presented between the Indian Reorganization Act's preferential mandate and the Employment Act's proscriptions against discrimination. After examining the history and purpose of Indian preference statutes (including the one under consideration here), the Court said that in the absence of an affirmative showing of an intention to repeal, the only justification for a repeal by implication is that the statutes are irreconcilable. The Court found that the statutes were not. It concluded that a provision aimed at furthering Indian self-government by granting employment preference to Indians for positions in the Bureau of Indian Affairs can readily co-exist with a general proscription against employment discrimination. "Any other conclusion," said the Court, "can be reached only by formalistic reasoning that ignores both the history and purposes of the preference and the unique legal relationship between the Federal Government and tribal

---

negotiate contracts for all varieties of Indian products—beads or roads. I believe the Act could have no other reasonable meaning.

**7.** In *Great Western Broadcasting Corp. v. N. L. R. B.*, 310 F.2d 591, 595 (9th Cir. 1962), the following definition of "product" was given: "In its broadest sense, the term 'product' denotes anything which is produced. Since economic activity includes the rendition of serv-

ices, it is appropriate, where the context otherwise permits, to refer to a completed service as a 'product.'" The context of the instant statutory provision permits a broad definition to be employed. If pure services are thought to be includable within the definition, so ought to be activities such as road building which, though labor intensive, result in a tangible product.

Indians." 417 U.S. at 550, 94 S.Ct. at 2482. The Court went on to observe that the preference statute applied to a very specific situation, while the Employment Act provision applied to Federal employment generally. In upholding the preference statute, the Court noted that a specific statute will not be controlled by a more general one.

Essentially the same considerations apply to the case before us. Once again, an Indian preference statute is involved.[8] Neither the language nor the legislative history of the Federal Property Act indicates an intent to repeal or modify the Buy Indian Act. The Act applies in limited circumstances only; the relevant Federal Property Act provisions apply to general Federal procurement of construction contracts.[9] Like the employment preference in *Mancari*, the Buy Indian Act arises from the unique legal relationship between Indians and the Federal Government. As the *Mancari* preference was designed to promote Indian self-government, the preference here is designed to promote Indian economic development and self-sufficiency. And, as the preference statute in *Mancari* could co-exist with a general policy of non-discrimination in government employment, the Buy Indian Act's authorization of the negotiation of road construction contracts with Indian firms can co-exist with a broad rule requiring public advertising for bids on Government construction contracts. This result is consistent with the following admonition from *Mancari*:

**8.** The *Mancari* Court listed the Buy Indian Act among the preference statutes similar to the one under consideration in that case. 417 U.S. at 538 n.2, 541 n.8, 94 S.Ct. 2474.

**9.** The majority's argument about specific statutory provisions controlling general ones is, in this sense, supportive of a result opposite to that reached in its opinion.

**10.** Even if the majority's general perception of the dominance of the advertising provisions were correct, there would still be a problem with the remedy in this case. An injunction has been upheld, and upheld in the face of substantial work on the construction project. It seems to me that this remedy prevents the Secretary from exercising his discretion in a way that might still except this contract from the advertising requirements. The policy of the Buy Indian Act is to encourage Indian econom-

The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.

417 U.S. at 551, 94 S.Ct. at 2483. Given the Supreme Court's admonition, our decision in this case should be to sustain both statutory provisions in a way that vitiates neither.[10]

I would reverse.

ic development by shielding Indian economic enterprises from the full rigors of market pressure. It is obvious that this policy purpose would be frustrated by an imposition of market pressures in the form of advertised bidding. In light of the purpose of the Buy Indian Act, advertised bidding with its inherent competitiveness may be within the "impracticability" exception to the advertising requirements of 41 U.S.C. § 252(c), (e) (1976). *See Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 708 (5th Cir. 1973), *cert. denied*, 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974) (holding competition "impractical" where at cross-purposes with the Small Business Act). At the very least, this case should be remanded with instructions allowing the Secretary to determine whether that exception applies. I believe the exception might well apply as a matter of law.